# AFFIDAVIT

I, Logan Dye, a Detective with the Jackson County Drug Task Force (JCDTF), being duly sworn, hereby state as follows:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code.

2. I am a Deputy Sheriff with the Jackson County, Missouri Sheriff's Office, and have been a law enforcement officer since December 2016. I am currently assigned as a detective with the JCDTF and have served in that capacity since August 2018. I have received deputation as a Special Federal Officer (SFO) with the Federal Bureau of Investigation (FBI) for conducting investigations and making arrests for offenses enumerated in Title 21 of the United States Code.

3. During my career as a law enforcement officer, I have participated in numerous investigations where individuals have violated drug laws. Through my training and experience as a police officer, and through contacts with other agencies, I know the following:

   a. That it is common for the drug traffickers to retain contraband proceeds of drug sales, and records of drug transactions in secure locations within their residence to conceal them from Law Enforcement authorities.

   b. That drug traffickers commonly have in their possession (that is on their persons, at their residences, in their vehicles, and/or at their business), books, records, computers, computer disks and papers containing records of sales, and papers containing names, addresses, and telephone numbers that relate to distributors or purchasers of controlled substances. These records are frequently used to keep track of quantities of drugs sold and the amounts collected or owed. Drug traffickers also regularly have in their possession stocks, bonds, other securities, and U.S. currency; these items are frequently the proceeds of drug transactions or instrumentalities of money laundering. Drug traffickers also frequently have paperwork and keys associated with safe deposit boxes they use to maintain records of sales of controlled substances, ledgers, drug debts and payments, as well as various forms of negotiable instruments and currency that are proceeds of their drug transactions.

   c. That drug traffickers also frequently maintain customer lists, drug source telephone information in cellular phone call logs and that cellular phones also contain photos and text messages of drug related information relevant to drug trafficking in the digital media/memory of the phones.

d. That it is common practice for narcotics traffickers to keep U.S. currency in specific denominations utilizing "bundles." It is also common for narcotics traffickers to keep proceeds pertaining to the sale of illicit narcotics in safes, along with drug ledgers, narcotics, and other equipment used in the furtherance of drug crimes.

e. That persons involved in the sale of illegal controlled substances commonly have in their possession (that is on their persons, at their residences, in their vehicles, and/or business), firearms, including but not limited to, handguns, rifles, shotguns, other weapons, and ammunition. Firearms are also taken in trade for drugs and used to protect and secure the person's property, which may include, but not limited to, drugs, jewelry, body armor, drug paraphernalia, books, records, and U.S. currency.

f. That drug traffickers also frequently have in their possession (that is on their persons, at their residences, in their vehicles, and/or business), digital or other types of scales used to weigh quantities of drugs, drug packaging and paraphernalia; electric tape and packaging/sealing material or sealing equipment. They also frequently possess photographs, in particular photographs or co-conspirators, assets, or controlled substances and they also frequently retain records and correspondence that serve as indicia of their occupancy, residency, or ownership of the premises where they are operating their drug trafficking business.

4. On numerous occasions, I have spoken with suspects, defendants, and narcotics investigators concerning the methods and practices of drug traffickers. Through these investigations, my training, experience, conversations with experienced agents, other drug investigators, and law enforcement personnel, I have become familiar with the methods employed by drug traffickers in general. This includes Mexico-based drug-trafficking organizations known to smuggle, safeguard, distribute drugs, and collect and launder drug-related proceeds. These methods include the use of debit calling cards, public telephones, wireless communication technology (such as paging devices and cellular telephones), counter surveillance, elaborately-planned smuggling scheme tied to legitimate businesses, false or fictious identities, and the use of coded communications in an attempt to avoid detection by law enforcement and circumvent drug investigations.

5. This Affidavit is submitted in support of an application for a search warrant for the residence located at 115 West Nickell Avenue, Independence, Western District of Missouri (hereinafter referred to as the "**Target Residence**"). The structure is the second structure west of Main Street on the south side of West Nickell Avenue. An alley runs north/south on the west side of the residence. The driveway to the residence is located on the south side and is accessible from the alley. The structure is a single-story off-white residence with white trim and a brown composite roof. The front door is centered on the north facing side of the residence. The numbers "115" are posted horizontally in black lettering above the front door. A white picket fence surrounds the front yard.

6. If a search warrant were to be granted, I believe the following items would be seized: methamphetamine, heroin, any other controlled substances, firearms and/or ammunition, body armor, drug paraphernalia, drug packaging material, drug ledgers, electronic devices used to facilitate the distribution of controlled substances (i.e. cellphones, tablets, etc.), video surveillance equipment, and U.S. currency believed to be the proceeds of illegal sales of controlled substances.

7. On February 2018, a cooperative narcotics investigation consisting of the JCDTF, FBI, and the United States Postal Service was initiated. During the course of the investigation, a California based methamphetamine supplier was identified as "**SERGIO**" a.k.a. CHITO. The investigation identified Sonia **LARA**/HERNANDEZ as an associate of **SERGIO**, who is directly involved in the distribution of methamphetamine in the Western District of Missouri.

8. On August 8, 2018, Sonia **LARA** delivered approximately 81.3 grams of heroin to a co-conspirator, who delivered the heroin directly to an undercover detective. During the course of the transaction, **LARA** operated a white Dodge Charger bearing MO registration FR4-J8G.

9. On October 31, 2018, JCDTF Detective Henderson and FBI SA Dan Hajek conducted an in custody interview of a suspected narcotics trafficker. During the course of the interview, **LARA** was identified as a methamphetamine supplier in the Kansas City Metro area. Detectives were advised **LARA** had delivered approximately one kilogram of methamphetamine to an individual in Kansas in exchange for $7,500. The cooperating witness had arranged the transaction and utilized **LARA** as the source of the supply. The cooperating witness further stated that **LARA** was working for **SERGIO**. The cooperating witness described **SERGIO** as a Hispanic male that resided in California, but supplied methamphetamine to the Kansas City Metro area. The cooperating witness advised **LARA** was "trusted" by **SERGIO** and was responsible for the money and methamphetamine distribution in the Kansas City metropolitan area.

10. Information had been obtained through the course of the investigation that indicated this drug trafficking organization utilized tractor trailers to transport methamphetamine to the Kansas City metropolitan area. The same trucks would then transport the narcotics proceeds back to California from the sales of the aforementioned methamphetamine. On November 28, 2018, physical and electronic surveillance was established on a white Chevrolet Malibu that was known to be utilized in the trafficking of methamphetamine. The Chevrolet Malibu was located at the **Target Residence**. The Chevrolet Malibu left the **Target Residence** and responded directly to a rest area located off of Interstate 70, east of 78th Street, Kansas City, Kansas. Upon the Malibu's arrival, surveillance units observed the occupant(s) of an already parked tractor trailer motion for the Malibu to pull up to the passenger side of the tractor. After brief contact between the Malibu and the occupants of the tractor trailer, the Malibu exited the rest area, followed shortly thereafter by the tractor trailer. Surveillance was maintained on both vehicles. A traffic stop was conducted on the Malibu prior to it making any other stops. The vehicle was being operated by **LARA** and occupied by her two juvenile children. The tractor trailer was stopped by the Missouri State Highway Patrol, prior to it making any other stops. During the course of the tractor trailer stop/inspection, approximately $39,190 was located in a cargo compartment on the passenger's side of the truck. The currency was consistent with proceeds from drug trafficking. The currency was located in three manila envelopes, with each envelope containing a sum of currency. The money inside each envelope was secured with rubber bands in varying denominations.

11.     On January 30, 2019, the JCDTF and FBI conducted a controlled payback of a narcotics debt. A JCDTF CI placed a phone call to **SERGIO**, who was believed to be located in California. During the conversation, the CI advised **SERGIO** he/she had $2,500.00 that was owed for a drug debt. **SERGIO** advised the CI he/she would meet with "Sonia" and provide her the money. Prior to the phone call being initiated, surveillance units established physical surveillance on Sonia **LARA**'s known residence, the **Target Residence**. Surveillance units observed **LARA**'s vehicle parked in the driveway of the **Target Residence**. During the phone contact with **SERGIO**, a time and meeting place were established. Surveillance units observed **LARA** leave the residence operating her white Dodge Charger. **LARA** arrived at the pre-determined meeting location and met with the CI. The CI provided **LARA** with the $2,500.00 of pre-recorded funds to satisfy the drug debt. Surveillance units were able to maintain physical surveillance on **LARA**, who responded directly back to the **Target Residence** and entered the residence.

12.     On February 9, 2019, the JCDTF and FBI conducted a controlled purchase of methamphetamine. A JCDTF CI was contacted by **SERGIO**, who advised a shipment of methamphetamine had arrived in the Kansas City Metropolitan area. The CI purchased approximately two pounds of methamphetamine. The CI and **SERGIO** agreed that a portion of the price agreed upon for the methamphetamine would be paid back at a later date. On February 12, 2019, the JCDTF conducted a controlled payback of the remaining drug debt. The JCDTF CI contacted **SERGIO** and advised the money was ready. **SERGIO** instructed the CI to respond to a pre-determined meeting location, which was located in the Western District of Missouri. Upon the CI's arrival, he/she made contact with **LARA**, who was operating her known white Dodge Charger. **LARA** was provided with $2,500.00 of pre-recorded funds to satisfy an outstanding drug debt. Physical surveillance was maintained on **LARA** after the transaction. **LARA** responded directly to the **Target Residence**, and entered the residence following the transaction.

13.     On March 29, 2019, SA Dan Hajek presented a complaint and affidavit in case number 19-MJ-00052-MJW that included **LARA** as a Defendant. The Honorable Robert E. Larsen signed the complaint and affidavit and issued arrest warrants for the defendants, including **LARA**. The complaint charged **LARA** with conspiracy to distribute more than 500 grams of methamphetamine.

14.     On April 8, 2019, the Independence, Missouri Police Department's tactical unit affected the arrest of **LARA** at the **Target Residence**. During the course of the arrest, entry was made into the **Target Residence** and **LARA** was taken into custody. A protective sweep was completed of the residence as there were two juvenile children inside. Law enforcement officers also went back inside the residence at **LARA's** request to obtain a cellular phone and items of clothing. During the protective sweep and trips inside the resident, law enforcement observed a large drinking glass was observed on the bedroom dresser. Inside of the glass were multiple (7-10) "bundles" of U.S. currency. The bundles appeared to consist of $20.00 and folded in half which indicated they were possibly separated into specific total amounts. There was also a gray "document" style safe located on the bedroom floor. The safe was closed and the key was affixed in the key hole.

15. While speaking with LARA, Detective Henderson requested consent to search the **Target Residence**, **LARA** denied the request.

16. On April 8, 2019, a search warrant was executed at 1612 Oakley Avenue, Kansas City, Missouri. The warrant was issued by the Honorable Robert E. Larsen, United States Magistrate Judge. Upon the execution of the warrant, Christian Yurile ANAYA ESCAMILLA was taken into custody. ANAYA was a known co-conspirator in this drug trafficking organization (DTO). Upon the search of the residence, approximately 2,168 grams of methamphetamine were recovered, along with multiple firearms and approximately $2,400 in U.S. currency. It should be noted that the above-described narcotics paybacks to **LARA** were made to repay debts related to methamphetamine received from the residence located at 1612 Oakley Avenue.

17. The investigation has shown that **SERGIO** supplies methamphetamine from California to Kansas City and controls the distribution from California. **ANAYA** and **LARA** are directly involved in the distribution of methamphetamine occurring within the Western District of Missouri. **ANAYA** distributes methamphetamine and the proceeds are collected by **LARA** and stored at the **Target Residence**. Phone records obtained by the FBI indicate seventy-three phone contacts between **LARA** and **SERGIO** between the dates of February 23, 2019, and March 19th, 2019, indicating **LARA**'s continued involvement.

18. I believe that there is probable cause to believe that large amounts of United States currency and methamphetamine are being kept in the **Target Residence**. I further believe that executing a search warrant at the **Target Residence** will yield the recovery of methamphetamine, drug packaging material, and large amounts of U.S. currency to include JCDTF/FBI buy funds.

19. I further request that the Court order that the affidavit in support of this application be sealed until further order of the Court. The affidavit discusses an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal the affidavit because its premature disclosure may seriously jeopardize that

investigation. Additionally, it is requested that the affidavit's disclosure be allowed as necessary for any discovery in criminal prosecutions without further court order.

    **FURTHER AFFIANT SAYETH NAUGHT.**

_____
LOGAN DYE
Detective
Jackson County Drug Task Force

Sworn before me on this ___8th___ day of April 2019.

_____
HONORABLE JOHN T. MAUGHMER
United States Magistrate Judge
Western District of Missouri

6

Case 4:19-sw-00116-JTM   Document 1-1   Filed 04/08/19   Page 6 of 6